# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Crim. No.: 18-49 (KBJ) |
| : | |
| RAMBIE NGUYEN, : | |
| : | Sentencing: October 2, 2018 |
| Defendant. : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum to assist the Court in issuing an appropriate sentence in this case. For the reasons set forth herein, if the Court elects to adopt the varied guidelines range discussed below, the government would recommend that the Court sentence the defendant to a term of 37 months incarceration, to be followed by 120 months of supervised release, with the conditions recommended by the United States Office of Probation and the Bureau of Prisons. Additionally, the defendant is required by statute to register as a sex offender for a minimum period of 15 years. In support of this memorandum and recommendation, the government relies on the following points and authorities, and such other points and authorities that may be cited at the sentencing hearing.

**I.   BACKGROUND**

    **A.   Procedural Background**

The defendant, a 22-year-old man, was arrested on January 16, 2018 after traveling from Virginia to Washington D.C. to have sex with an eight-year-old child. The defendant made his initial appearance before a United States Magistrate Judge in the United States District Court for

the District of Columbia on January 17, 2018. He was ordered held without bond, in which status he remains. On March 14, 2018, the defendant pled guilty to an information charging him with one count of Travel With Intent to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. § 2423(b), pursuant to a Rule 11(c)(1)(B) plea agreement. The Court set a sentencing date of June 26, 2018.

On May 29, 2018, the Court granted a petition submitted by the U.S. Probation Office directing the U.S. Bureau of Prison (BOP) to conduct a psychological and psychosexual examination of the defendant. The forensic evaluation was conducted at Federal Correctional Institution in Butner, North Carolina between July 11, 2018 and November 2, 2018. Based on that evaluation, BOP issued a forensic evaluation report on November 2, 2018 ("Forensic Evaluation"). Sentencing is scheduled for January 22, 2019.[1]

### B.   Statement of Offense

Leading up to January 15, 2018, Detective Timothy Palchak (hereinafter "the UC"), was acting in an undercover capacity as part of the Metropolitan Police Department-Federal Bureau of Investigation ("MPD-FBI") Child Exploitation Task Force. The UC had posted an advertisement on a social networking application known to law enforcement as a platform used by individuals who have a sexual interest in children. The application allows users to post "confessions," which may or may not be factual, by super-imposing text on a picture that is then posted. The application also allows users to message one another. The application is completely anonymous, with each user issued a random nickname upon joining.

---

[1] On May 21, 2018, a draft Presentence Investigation Report ("PSR") was submitted in this matter. The government has been advised that the Final PSR will be filed on or about January 15, 2019. Accordingly, all citations to the PSR herein refer to the May 21, 2018 draft report.

On Monday, January 15, 2018, the UC posted an advertisement on the social networking application whose text read, "Single dad day off home with daughter. Others??? Pm me".[2] At approximately 10:21 a.m. that day, the UC received a message in response to his posting from an individual with the username "Cigs", later identified as the defendant, Rambie Nguyen. The defendant asked how old the UC's daughter was, to which the UC responded "8". The defendant asked why the UC brought up his daughter in the post. The UC responded that he was looking to chat with other dads, which led to the following exchange:[3]

| | | |
|---|---|---|
| UC: | | Why what are u into |
| Defendant: | | Why |
| Defendant: | | Do you have a fantasy of doin your daughter? |
| UC: | | Do u |
| UC: | | U like young? |
| Defendant: | | I don't have one. And that's hot if you do |
| Defendant: | | You do right? |
| Defendant: | | Invite me over some time |

The defendant stated that he lived in "Fairfax" and asked the UC about the UC's sexual experiences with underage children. The defendant, in turn, stated that he had "had sex with 16". The UC stated that his daughter was much younger:

| | | |
|---|---|---|
| UC: | | My daughter is only 8 so probably to young for u |
| Defendant: | | Have you touch your daughter |
| UC: | | I have to run |

---

[2]   The abbreviation "PM" stands for "private message". Martin Luther King Jr. Day fell on January 15, 2018.
[3]   All text abbreviations and typographical errors in quoted chat language reflect the original.

    Defendant:  Huh?

    UC:  Yes I do

    Defendant:  If you don't mind me touching your daughter that would be great

  The UC provided the defendant his username on KiK messenger, a free mobile application that permits users to send text messages and other content, including videos and images. Shortly thereafter, the UC received a KiK message from the defendant, whose KiK username was "ondoyfitness". The defendant stated that he was "kinda turn on talking about your daughter". The UC wrote to the defendant, "Is 8 to young? If it is I totally understand". The defendant responded, "Yeah. What would you want us to do with your daughter/It's really up to you". The UC wrote that he was "cool with it" but that "if she is to young I understand". The defendant responded, "I know/What's the plan".

  The defendant asked for a picture of the UC's daughter. The UC sent the defendant an image depicting a clothed female child who appeared to be approximately 8 years old. (Note that the image was not of a real child.) The defendant asked if the UC had a selfie with him and his daughter. The UC, in turn, asked the defendant what kind of pictures the defendant had. The defendant stated that he did not have any "naughty photos" and that he had recently been arrested and his phone seized. The defendant indicated that his arrest related to a 14 year old he had met on the same social media platform on which he had met the UC, but that he did not have sex with the 14 year old and was only arrested "for a couple of hours." The defendant then sent the UC a picture of what appeared to be an arrest warrant issued in Stafford County, Virginia. The picture showed a portion of the defendant's name and address.

  The UC then sent the defendant a picture depicting part of the child's face as well as part of the UC's face. The defendant asked the UC, "Are we cool?" The UC replied, "I think so". The

4

UC asked the defendant, "What are u looking to do and what dates are good for u?" The defendant responded that he worked tomorrow (January 16), was off at 2:00 p.m., and that he was "good witg anything". The UC advised that he would have his daughter at 3:00 that day.

The defendant asked the UC, "What can you do with your daughter". The UC replied that he did "everything" except for full intercourse. The defendant and UC then engaged in the following conversation:

| | |
|---|---|
| Defendant: | Have you had sex with your daughter |
| UC: | I have rubbed my dick in her yes |
| UC: | What are u looking to do with her? |
| Defendant: | It doesn't hurt her? |
| UC: | Only the head |
| Defendant: | What do you want me to do |
| Defendant: | I'll do anything |
| UC: | What are u interested in doing |
| Defendant: | Probably touching her |
| UC: | Ok where u want to touch her |
| Defendant: | And try to put mine in |
| UC: | Ok I'm cool with that are u clean? |
| Defendant: | Private part. Lick her |
| Defendant: | I'm clean |

The defendant asked the UC, "Is she okay with It though?" The defendant then asked the UC about the specifics of sexually abusing the UC's daughter, asking the UC, "Do you wanna be

5

with her when i touch her" and stating that he did not mind if the UC watched. The defendant also stated, "I wanna watch you first with her if that's okay".

The defendant and the UC arranged to meet the next day, January 16, 2018, at 5:00 p.m. at an establishment near the UC's purported apartment. The UC provided the defendant with a cell phone number and advised that it would be easier for the defendant to contact him on that number the next day. Shortly thereafter, the UC received a text message on that number from the cell phone number (571) 839-4289, which stated, "Hi from KiK".

Using a law enforcement database, agents were able to identify the subscriber for the above cell phone number as Rambie Ondoy Nguyen residing at an address in Fairfax Station, Virginia. Using a law enforcement database, agents were also able to establish that an individual named Rambie Nguyen, residing at an address in Fairfax Station, Virginia and born in 1995, had been arrested on August 3, 2017 by Fairfax County Police Department on a misdemeanor arrest warrant issued in Stafford County, Virginia, charging the defendant with Contributing to the Delinquency of a Minor. This information matched the portions of the arrest warrant visible in the image sent by the defendant to the UC.

The defendant and the UC continued to converse over KiK messenger on January 15, 2018. The UC provided the defendant with additional opportunities to back out of the meeting in light of his purported daughter's age:

| | | |
|---|---|---|
| UC: | | Are u sure you are comfortable with her being 8. I just want to make sure your cool with it. |
| UC: | | If not it's cool |
| Defendant: | | Haven't try it. I can try |
| Defendant: | | Since youre okay with it |

| | |
|---|---|
| UC: | But what I'm saying is that if you find 8 to be to young then maybe u can find older on here |
| Defendant: | I'm sure 8 is fine |

The defendant proceeded to ask the UC if he had photos of his daughter in her panties. The UC responded by sending the defendant a picture of what appeared to be the torso of a prepubescent child exposing part of her stomach and underwear, which led to the following exchange:

| | |
|---|---|
| Defendant: | That's nice |
| UC: | Thanks! |
| Defendant: | I wish i have a daughter like her someday |
| UC: | Well look her mom is picking her up soon so I have to get her ready to leave. But will have her tomorrow. Meet at 5 right? |
| Defendant: | Yes. Can you put your pinky in her? |
| Defendant: | I'm really turn on right now |
| UC: | I cant right now, would rather wait to do it live tomorrow |
| UC: | Once we meet |
| Defendant: | Oh okay. Just want see it |
| UC: | I'm john btw |
| UC: | You? |
| Defendant: | I can tell |
| Defendant: | Ramskie |
| UC: | Ok cool |
| Defendant: | There's no way for you to put your pinky in her real quick? |

The UC declined to provide the picture requested by the defendant but stated that they should text in the morning to work out the details of where they would meet. The defendant agreed.

Before signing off for the day, the defendant asked the UC, "What if her mom finds out/What if she tells her". The UC reassured the defendant that his daughter would not reveal the plan to her mother. The defendant directed the UC to "delete our convo".

On Tuesday, January 16, 2018, the UC contacted the defendant over KiK at approximately 8:27 a.m. The defendant asked the UC, "What can she do" to which the UC responded, "Just about everything." The defendant replied, "Okay awesome/I'd like to watch you with her first before I touch her/If that's okay". The defendant stated that this was his first time and that he did not know what to expect. The defendant asked the UC about other times he had allowed other men to have sexual contact with his daughter and what sex acts the 8 year old knew how to perform. The defendant asked the UC, "Does she know how to suck", whether the UC had tried penetrating her "half way" with his penis, and whether penetration hurt her.

The defendant the UC then engaged in a text message conversation regarding whether to meet up later that day. The defendant advised that he would try to get off work early that day. The UC suggested that they meet at bar near his purported apartment in downtown Washington D.C. at 5:00 at the latest, or earlier if the defendant got off work earlier. The defendant asked the UC how long he could stay, and the UC replied that he could stay as long as he wanted, as he would have his daughter all night.

The defendant and the UC continued to chat over KiK messenger in the early afternoon of January 16. The defendant stated that he had had sex with a 16 year old in Maryland whom he had met on the same social media platform. With respect to the UC's daughter, the defendant stated

that he wanted to "try everything slowly" with her. The defendant also asked the UC, "You don't mind if I can have a private session with your daughter?/Like when you're done with her".

The defendant advised the UC that he would be going home early, and could meet up before 5:00 at the prearranged meeting location. The defendant texted the UC that he would be wearing a blue jacket, black jeans and cowboy boots. At approximately 4:05 p.m., the defendant texted the UC to advise that he was "looking for a garage right now". At 4:24 p.m., the defendant texted the UC that he had parked and was outside the meeting location. The UC asked if he should come or if the defendant would be coming in. The defendant responded, "Just come out and we can go".

The UC exited the location and met the defendant, who was dressed as he had described in the text message. He was placed under arrest and produced a Virginia driver's license bearing the name Rambie Nguyen. The defendant was transported to the FBI Washington Field Office, where he was advised of his *Miranda* rights and voluntarily provided a statement to law enforcement. In the statement, the defendant identified himself as Rambie Ondoy Nguyen, born in 1995. The defendant stated that he had been chatting with the father of an 8 year old on a social media platform, as well as on KiK and over text message. The defendant advised that he came into Washington D.C. that afternoon from his home in Virginia. The defendant stated that he came into Washington D.C. to hang out with the father and to "touch" his 8-year-old daughter. Asked to clarify, the defendant stated that he intended to "play with her" in a "sexual" manner. Asked if they had talked about specific thing he wanted to do, the defendant stated "everything that was sexual." The defendant acknowledged wanting to engage in oral sex with the child, digitally penetrating the child, and penetrating the child vaginally and anally with his penis. Asked if these sexual acts were what the defendant and the father discussed specifically, or whether they were what the defendant hoped would happen, the defendant responded it was the latter. The defendant

stated that he liked older women and indicated that this was the first time he had done something like this.

## II.     SENTENCING CALCULATION

### A.     Statutory Penalties

The offense of Travel With Intent to Engage in Illicit Sexual Conduct, in violation 18 U.S.C. § 2423(b), carries a maximum sentence of 30 years imprisonment, a maximum fine of $250,000, and a term of supervised release of not less than five years and up to life pursuant to 18 U.S.C. § 3583. *See* PSR ¶¶ 126, 131. Pursuant to 18 U.S.C. § 3013(a)(2)(A), the defendant must pay a mandatory special assessment fee of $100 for each felony conviction payable to the Clerk of the United States District Court for the District of Columbia. The defendant must also register as a sex offender for a minimum period of 15 years pursuant to 18 U.S.C. § 2250 and 34 U.S.C. § 20911(2) and 20915(a)(1).

### B.     Guidelines Range

The government agrees with the calculation of the defendant's Guidelines sentencing range set forth in the PSR. *See* PSR §§ 50-59. The base offense level is 30 pursuant to U.S.S.G. §§ 2G1.3(c)(3) and 2A3.1(a). The government agrees with the PSR that the following specific offense characteristic applies:  the offense involved a minor under the age of 12 (+4). *See id.* ¶¶ 51. No additional adjustment apply. The defendant's adjusted offense level is therefore 34. *Id.* ¶ 59.

The defendant is entitled to a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). *Id.* ¶ 57. The government requests that the defendant's level be decreased by an additional point pursuant to § 3E1.1(b), as the defendant timely notified authorities of his

intention to enter a guilty plea and thus permitted the government and the Court to preserve resources. *Id.* ¶ 58. With these adjustments, the defendant's total offense level is 31.

The defendant has a total criminal history score of zero. According to the sentencing table in U.S.S.G. Chapter 5, Part A, a criminal history score of zero establishes a criminal history category of I. With a total offense level of 31 and a criminal history category of I, the defendant's recommended guideline sentencing range is 108 months to 135 months, a supervised release range of 5 years to life, and a fine range of $30,000 to $250,000. *Id.* ¶¶ 127, 132, 146.

However, given the unique facts and circumstances of this case, the government agreed as part of the plea agreement not to oppose the Court's consideration of a downward variance related to the age of the victim. Per the plea agreement, had the specific offense characteristic that the victim had not attained age 12 not applied here, the defendant's guidelines would have been calculated under U.S.S.G. § 2G1.3(a)(4), with a resulting base offense level of 24. With no additional specific offense characteristics applicable and the above reductions for acceptance of responsibility, the defendant's total offense level would be 21, and his corresponding sentencing guidelines range would be 37-46 months ("varied guidelines range") imprisonment and fine range would be $15,000-$150,000. U.S.S.G. § 5E1.2.

### III. GOVERNMENT'S RECOMMENDATION

#### A. Application of the Federal Sentencing Guidelines

In *United States v. Booker*, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1). *Booker*, 125 S. Ct. at 756.

In post-*Booker* cases, the Supreme Court has stated that a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. *See United States v. Gall*, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."). After giving both parties an opportunity to argue for an appropriate sentence, the district court should then consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentence available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

    **B.**    **Basis for the Government's Recommendation**

The government submits that a sentence of 37 months incarceration, representing the bottom of the varied guidelines range, to be followed by 10 years supervised release, and the specific conditions of supervision recommended by the United States Office of Probation, is appropriate and warranted based on the factors outlined in 18 U.S.C. § 3553(a). The recommended sentence is sufficient but not greater than necessary to accomplish the purposes of sentencing in light of the defendant's criminal conduct and his history and characteristics.

1.     **Nature and Circumstances of the Offense**

The offense conduct starkly demonstrates the danger the defendant poses to children in the community. The defendant initiated contact with the UC, a person whom the defendant believed was sexually abusing his eight-year-old daughter, and arranged to meet with the UC for the purpose of engaging in sexual acts with that child. More than once during their conversation, the UC encouraged the defendant to break off the conversation because his purported daughter was so young ("My daughter is only 8 so probably to young for u") ("Is 8 to young? If it is I totally understand") ("if she is to young I understand"). The defendant, however, was not deterred; he requested pictures of the child, encouraged the UC to abuse the child ("Can you put your pink in her? I'm really turn on right now"), described in detail the sex acts he intended to engage in with the child ("Probably touching her . . . . And try to put mine in") ("Private part. Lick her") and made a specific plan to meet the UC to sexually abuse that 8 year old girl.

The defendant then executed that plan, driving from Virginia into downtown Washington D.C. to meet the U.C. at the prearranged location. At no point did the defendant express the slightest hesitation about meeting with the UC or sexually abusing the eight-year-old child. But for the fact that the defendant happened to be speaking with a UC—a fact he plainly did not know—the defendant would have carried that plan out to its ultimate conclusion. And after his arrest, the defendant provided a statement to law enforcement in which he acknowledged that he intended to engage in oral sex with the child, digitally penetrate the child, and to penetrate the eight year old vaginally and anally with his penis.[4]

---

[4]     During his BOP Forensic Evaluation, the defendant provided a different account, claiming that he knew he was speaking to an undercover officer and that he was hoping to be arrested because his adoptive parents had told him he would have to move out. Forensic Evaluation at 12-13, 15-16. Yet when the evaluator noted that this purported rationale made no sense, the defendant was unable to provide any additional explanation, and later stated that he did not know why engaged in the offense conduct. *Id.* at 13.

The danger that the defendant poses to children demands the imposition of a sentence, both to protect the community from this defendant and to deter others who would prey on children the way the defendant sought to do.

### 2. Defendant's History and Characteristics

In fashioning the defendant's sentence, the Court should take into account the defendant's history and characteristics. On the one hand, the defendant has no prior criminal convictions beyond traffic offenses. And unlike in many cases of this kind, the defendant did not, in his conversations with the UC or his post-arrest statements, disclose prior hands-on sexual abuse of a child.

However, as documented in the PSR and the BOP Forensic Evaluation, on two prior occasions, law enforcement investigated inappropriate contacts between the defendant and an underage girl. On May 29, 2017, police were called to investigate contacts between the defendant and a middle school student, whose brother had found the girl in the defendant's car. PSR ¶ 65; Forensic Evaluation at 8. The defendant had met the girl on a social media application and met with him two times outside their home. The girl and the defendant both denied any sexual contact and no charges were brought. *Id.*

Less than three months later, on August 2, 2017, the defendant was arrested after meeting up with a 14-year-old girl he had met a social media application. PSR ¶ 64. The police were called after the girl's mother found the girl in the defendant's car parked outside their home. Although there was no evidence of sexual contact and the 14-year-old denied that they had discussed anything sexual in nature, the conduct is concerning and the defendant was charged with contributing to the delinquency of a minor. *Id.*; Forensic Evaluation at 7-8, 12.

The BOP Forensic Evaluation concludes, following a STATIC-99R evaluation, that the defendant falls in the "Above-Average" risk category for recidivism and that these results suggest that the defendant's risk of future sexual offending is of "significant concern." Forensic Evaluation at 18-19, 21. Both the forensic evaluator and the PSR writer have recommended special conditions of supervised release to protect the community and reduce the risk of re-offense when the defendant is released, including intensive sex offender treatment, to include polygraph and penile plethysmograph testing, GPS monitoring, and restrictions on contact with minors and access to Internet-connected devices. *Id.* at 22; PSR ¶¶ 135-37.

### 3. Punishment, Deterrence, Protection, and Correction

The sentencing court "shall impose a sentence sufficient, but not greater than necessary" to comply with the need for a sentence: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The government's recommended sentence is sufficient, but not greater than necessary, to provide just punishment for the offenses. Were it not for the fact that, unbeknownst to the defendant, he happened to be speaking to an undercover agent rather than a real father, the defendant would have carried out his plan and abused a real child. A significant period of incarceration is required to reflect the seriousness of this conduct and to deter others who would go to such lengths to target children.

### 4. Available Sentences

The defendant should be sentenced to a term of incarceration. The defendant is in Zone

D of the Guidelines, and thus a probationary sentence would be a significant departure from the Guidelines range. According to the PSR, the defendant does not appear to have the ability to pay a fine. *See* PSR ¶¶ 116-25. In addition, the Court should impose a lengthy term of supervised release to help ensure that the defendant does not re-offend. The conditions of supervised release should include: sex offender evaluation and treatment, restrictions on direct contact with minors, and restriction from possession or otherwise operating devices capable of connecting to the Internet. Forensic Evaluation at 22; PSR ¶¶ 135-37 The Court should impose all of the special conditions recommended by the United States Office of Probation in the PSR and at sentencing. *See id.* ¶¶ 116-25.

### 5.   Avoiding Unwarranted Sentencing Disparities

One of the statutory factors to consider at sentencing is the need to avoid unwarranted disparity. Indeed, avoiding such uncertainty and disparity was one of the purposes for the creation of the Sentencing Guidelines. Recognizing that the facts and circumstances of each case are unique, it is nevertheless instructive to consider the sentences imposed in cases involving comparable charges. This section contains information about similar cases in this District involving the charge of Travel with Intent to Engage in Illicit Sexual Conduct. The government notes that the sentence imposed in each of these cases does not necessarily reflect what the government recommended.

In *United States v. Michael Bazis*, 16-CR-84 (TSC), Bazis traveled to D.C. from another state to sexually abuse a purported 10-year-old child after communicating with a UC online. During his conversations with the UC, Bazis disclosed that he had previously met a father with a 16 year old daughter and engaged in sex acts with her. Bazis was sentenced to 78 months incarceration and 120 months of supervised release.

In *United States v. Michael Carter*, 15-CR-2 (CKK) Carter traveled to D.C. from another state to sexually abuse a purported 9-year-old child after communicating with the UC online. Carter was sentenced to 36 months of incarceration and 120 months of supervised release.

In *United States v. Michael Gutierrez*, 14-CR-194 (JEB), Gutierrez traveled to D.C. from another state to sexually abuse a purported child after communicating online with a UC. Gutierrez was sentenced to 33 months of imprisonment and 60 months of supervised release.

In *United States v. George Kahl*, 13-CR-99 (RMC), Kahl traveled to D.C. from another state to sexually abuse a purported 12-year-old girl after communicating online with a UC. Kahl was sentenced to 40 months of imprisonment and 10 years of supervised release.

In *United States v. Scott Swirling*, 13-CR-98 (JDB), Swirling traveled to D.C. from another state to sexually abuse a purported 12 year old year after communicating online with a UC. Swirling was sentenced to 42 months of imprisonment and 10 years of supervised release.

In light of the above, the government submits that its sentencing recommendation in this case avoids unwarranted sentencing disparities.

## CONCLUSION

WHEREFORE, for all of the reasons set forth herein, the government recommends that if the Court adopts the varied guidelines range, that the Court sentence the defendant to a term of imprisonment of 37 months, to be followed by 10 years of supervised release, with the conditions of supervision recommended by the United States Probation Office.

        Respectfully submitted,

        JESSIE K. LIU
        UNITED STATES ATTORNEY


        _/s/_____
        Jason Park
        Assistant United States Attorney
        D.C. Bar 1005417
        555 4th Street, N.W.
        Washington, D.C. 20530
        (202) 252-7202
        Jason.Park@usdoj.gov